Good morning. May it please the court, my name is Susan E. Hill and I represent the petitioner Mr. Asanidze. He is from a family that is of a part Assyrian nationality that was living in Georgia and Georgia has had two notable extremely violent conflicts over the breakaway region of South Assyria and as a result there is extreme nationalistic vehemence against people of Assyrian nationality. In our case the judge found that he did suffer harm and that it was on account of his nationality but the judge determined and the BIA upheld that it didn't amount to past persecution. Substantial evidence shows to the contrary though. Mr. Asanidze has basically grown up in an environment of this anti-occession nationalistic animosity and he suffered numerous incidents throughout his life that kept increasing in severity and frequency especially leading up in the last year, year and a half prior to the second conflict that happened in 2008. He suffered virtually every type of persecution, every type of harm that this court has ever encountered. When he was a child he was separated by figures of authority, his teachers, and he was called dirty, separated from the other students, they didn't want to be around him. Because of this he decided not to pursue any further studies and felt discouraged. His family was threatened numerous times. How is it that people are identified as being Ossessions? He testified that it was just known in his community and he said partially from the last name as well. But his last name is his father, he's Ossession on his mother's side. Yes. And I understand that the prior passports used to require an indication of this but was there a national ID card or something that would have identified him? How would somebody have known? There was not a national ID card but the judge did determine and the BIA upheld that the harm occurred on account of his nationality so I don't believe that's an issue at this point. Was there also a finding about whether the government, because both of these instances were not government perpetrators. No, these were individual targeted incidents. And so was there a finding about whether the government was willing or able to control this? Did he go to the police? He did go to the police. He went to the police two to three times at least and was always told to leave the country and the judge determined as well that the government was unable or unwilling to control the people that were persecuting him. So he suffered numerous incidents incumulatively under this court's case law. It does amount to persecution. Well, there were two. Were there more than two? I understand there was taunting and some economic difficulties but I gather he did have a job. He got a job but then he lost the job because his coworkers didn't want to work with a dirty obsession. His mother also lost her job. His father lost his job. His father was death threatened and the father left the country only to be poisoned and killed in Russia later. What's the evidence in the record on that other than the phone call from a morgue in Moscow? That was the evidence. He was poisoned and then the mother received... The father was killed about it. It didn't seem to be about being an obsession, right? I'm sorry? There's no indication that the father was killed because it was an obsession. Not in the record. Not directly but persecutors don't leave notes behind saying this is why. Yes, but he was in Russia. He wasn't in Moscow. He wasn't where he was living. He was in Georgia. Sorry, ma'am. His wife, Mr. Asenetsi's mother, did receive a phone call afterwards saying you got what you deserved, referencing the father's death. But no indication that the caller had any connection to the murder. Right, but it does go into the... It's somebody piling on. Yes, the persecutory environment. He was beaten and he was found to be a credible witness, and he has statements in the record, and they do describe in some painful detail that he was in extreme pain in his beatings. He was strangled. He described constantly having this, what were the words that he used? He used page 300. Helplessness is one of the most destructive senses one can ever have. He had frequent depressions and nervous breakdowns. This was all during his time that he was living in Georgia, so these incidences were increasing. They were getting more and more violent. They were specifically targeted against him. He did not seek out medical attention because he said he was humiliated. No one can blame him. Whenever they would go to the police, the police either would pretend they weren't hearing his claim or they would directly say, just leave the country. And because it was a nationalistic conflict, that was the intent of basically the Georgian society in general was to get the Ossetians to leave Georgian territory. No one cared about them. They wanted Ossetians to leave the motherland. He said that he was scared to leave his home. Again, he wasn't able to work. He left right before the second conflict erupted into violence. And after that, his mother and brother went into hiding, and he's never heard from them. It would be presumed that if they were safe, that they would be able to make contact with him. Of course, we don't know what happened to them, but it doesn't sound good. Cumulatively all together, this is a very persecutory environment. The judge said it was a close call. Substantial evidence here pushes it over the top, especially given the case law that both the judge and the BIA relied upon. As detailed in Petitioner's opening brief, those cases don't really support a finding that this was not persecutory. So what's the standard of review for us? Don't we have to find that the evidence compels the contrary conclusion? Yes. Is that different from finding that substantial evidence would support a contrary decision? I'm sorry. I guess it's semantics. But, yes, substantial evidence would compel that there's past persecution here, given all of these incidents. The real problem is that persecution is a legal standard. It's not exactly a fact, right? It's the infliction of suffering or harm. I'm sorry? Yes, Your Honor. The infliction of suffering or harm to punish for. . . And how much. I mean, that's what. . . Right. We just had the conversation in the prior case, right? Yes. It's a how much question. No one's doubting that he did suffer some harm. And as I was saying in the other case, we've been somewhat indistinct about how much. Now, it strikes me that this case does have more incidents, for example, than the other case and the ones that are actually cited. The difference is that it wasn't the government, and there seems to be some flavor in the cases that make some difference as to whether there's persecution. Maybe because it's not the same people or something. In other words, it may be for the same reason, but the people perpetrating these various. . . There's no unity as to who's perpetrating these various incidents. Well, yes. The evidence shows there is a unity, Your Honor. He describes an environment of living where your neighbors, your coworkers, everyone around you has had a relative that was killed in the 1992 incident. Now we're going to have another 2008 incident as well. And they're seeking. . . They want to target him and his family to avenge their dead relatives. And the BIA and the judge both upheld the finding that the government is not going to do anything to control. . . If we were to send this back, where would you be in the proceedings? You go back before the IJ and do what? I believe it should be sent back with the finding that past persecution occurred, and then it's the government's burden to rebut the presumption of future persecution. Presumably the government would be able to address questions as to whether he could be safely relocated elsewhere in the country? They would have to present individualized evidence demonstrating that he could safely go back there, yes. Presumably at that point, if the IJ thought that the government hadn't rebutted that, does the IJ still have discretion in granting asylum or not? I noted that you've got a couple of allegations that your client has a criminal record. The judge does have discretion, but that wasn't litigated down below. The IJ didn't say at this point, I wouldn't exercise my discretion in your favor anyway. Correct. And the judge did have opportunity, but he didn't address that. May I reserve the remaining time? The incident in 2008 with a drunk neighbor, was that connected to his ethnicity? Yes, it was. The neighbor said that his brother had died in the previous war and seeking to avenge the death. And what? I'm sorry. And seeking to avenge the death. And it was clear that's because this guy was a secessionist. Yes, yes. He said he constantly feared everybody, his neighbors, everyone. And was it, I see. So the incidents are in 2000, when he was a child, there was called names and so on. Was he beaten or anything when he was a child? Not when he was a child. All right. Then in 2007, people threw stones at him. Was it him or a window? It was at the family home during Christmas. Okay. Then there were three individuals. In 2007, later, there was this attack by three people. Yes, that's when he was strangled. And then there was the drunk neighbor. Yes. And then there was the fact that his father feared harm so left. Yes. And all three of them. A little odd because the father wasn't the one who was a secession, right? Correct. But he was accused at work of helping a secession. And he was married to a part of a secession. And we're discounting the murder or the supposed murder because nobody really knows what happened. Correct. That's not entirely. All right.  Your time is up. Thank you very much. Thank you. Yes, sir. Good morning, Your Honors. May it please the Court. My name is Kose Igamori, and I represent the United States in this case. This petition for review should be denied for two reasons. First, the evidence does not compel the conclusion that the harms alleged by the petitioner rise. Well, we just had this other case, right, where the guy was detained for seven days and beaten for a few minutes. So the problem was it wasn't repeated and it wasn't heard very much. In this case, there seems to be a long pattern of harassment and there's economic injury of some kind that appears. And there were three incidents, and he was beaten and they were repeated. So why is this on the other side of the same line we were just discussing? Well, first and foremost, the government does not intend to minimize his experience, which nobody should endure. But the question here is not even whether the harms rise to the level of persecution, but whether any reasonable adjudicator will be compelled to so fine. Well, but again, to me, these are legal questions, not fact questions, because you have to know the legals. It's not like did he tell the truth about whether he was beaten up or how much was he beaten up. We're taking everything he said as being credible, right? So what are we deferring to exactly? It seems to me that persecution has some content that either applies to this or doesn't. Well, the board does review persecution de novo. However, as this court has held in other cases, including Hoxha v. Ashcroft decided in 2003, that the question of persecution, when this court reviews it, is substantial evidence. Well, substantial evidence that what happened happened. That's a different question. I don't understand why it's a fact question. I mean, you might tell me that we should defer to it as a legal determination, but then we get into questions, but it's not really a fact question. Well, perhaps if this court were writing on a blank slate. However, this court has already applied substantial evidence, has said that this is a factual question to be reviewed for compelling evidence. And this case really, again, not to minimize his experiences, but compared to Hoxha, where this court found that the evidence did not compel a finding of past persecution, it really pales in comparison. In Hoxha, there was also a lifetime of harassment and discrimination and threats against the petitioner in that case, that if he did not leave Kosovo, that he would be killed. And on one occasion, he was assaulted, resulting in extensive facial bruising, as well as two broken ribs. And this court held that that did not compel a finding of persecution. That's not to say it cannot be persecution, but this court is constrained by its standard of review. In this case, also, there has been apparently a lifetime of harassment and discrimination. There's also been physical assault, but that's where the similarities end, because the petitioner in this case suffered, unfortunately, a black eye and a bloody lip, but no more than that. And he testified that he didn't seek medical attention because I believe his language was – In Hoxha, there was one incident of physical violence. Yes, Your Honor. Here, there were three. Is that right? No, Your Honor. There were two incidents of physical violence, one of which resulted in a black eye and a bloody lip, and the other of which did not result in any injury. And the petitioner stated in his testimony that he just left. The drunk neighbor was angry that his brother had been killed in the Assyrian conflict, and he started kicking him, and the petitioner testified that he just left. So, really, what we have here are two incidents of assault, one of which resulted in, unfortunately, some injury,  and that just does not compel the conclusion that he suffered harm rising to the level of persecution. And I'd also like to bring the Court's attention to a second case that petitioner relies on, Krotova v. INS, decided in 2005. There, as in this case, there had been two physical assaults, which resulted in relatively minor injuries. Again, this was, I believe, a bruising and also a bloody lip. But that case was – there was a special factor in that case in the sense that, in addition to the sustained economic pressure, which is similar to this case, the two physical assaults, the threats against the petitioner and his close associates, in Krotova, there was the additional factor, which the Court stated was significant, that the petitioner was prevented from practicing her religion. And we don't have that kind of special circumstance in this case, Your Honor. So the evidence just does not compel a conclusion that the petitioner suffered past persecution in this case. The evidence also does not compel the conclusion that the petitioner has a well-founded fear of future persecution, even if that issue had not been waived by the petitioner. The immigration judge and the Board found that the record evidence did not establish that ethnic Ossetians are a disfavored group in Georgia. Independent of – but that wouldn't – if we thought there was past persecution, that determination would not put the presumption and, therefore, wouldn't put the finding of a fair future persecution. Yes. If there's a finding of past persecution... Yes, there were one. If there were one, yes, Your Honor. But this is – there was no past persecution. There's a possibility that the law allows him to also seek qualification based just on well-founded fear. Right. And the government's position is, first, it's been waived, but even if it were not, that the evidence would not compel the conclusion that the petitioner has a well-founded fear of future persecution. Which way? Because it wasn't raised here. Yes, Your Honor. It was not raised before this Court. Now, the petitioner does argue a clear probability of future persecution, but looking at the brief as a whole, the statement of issues just focuses on past persecution. The summary of argument, just on past persecution, with a conclusory sentence at the end that says, alternatively, the Board also erred in denying withholding and cap. Finally, around page 23, the petitioner mentions the fear of future persecution, but then starts making an argument that does not address the immigration judge's findings about well-founded fear, which was that there was no continuing interest in the petitioner by these former private persons that – that had harmed him in the past. Right. And there is – and finally, there is evidence in the record of some torture committed by the government, mostly in the context of the armed conflict and persons detained by law enforcement and the military. However, the petitioner does not fear or has not alleged a fear of being detained by the government. And the evidence of torture is really not closely tied to his claim. So the evidence also would not compel finding on his torture claim as well. So for those reasons, this petition for review should be denied. Thank you. Thank you. Thank you. Just a few quick points. The court was asking what legal standard to defer to. The best the petitioner can offer is the case law that the judge and BIA relied upon, which was dealt with in the opening brief in detail, explaining how those case laws differed from the actual situation. And what we have is a bunch of discrete cases with different facts. Yes. And some attempt to say – just to distinguish one from the other. But it's a strange exercise. Correct. And just to continue on that path, with Kotova, where a respondent argued that it was significant that she was prevented from practicing her religion while there is no element of practicing her nationality. So that's not even applicable here. He was prevented from leading a normal life throughout his whole life. Finally, to the extent that it's an issue – There were more incidents in Kotova, I think. There were – How about harsher ones? Some could be described as harsher as far as physical injuries. However, it shouldn't be predicated on the misfortune or luck of where a certain blow lands on a person to injure them. In this case, he suffered numerous nervous breakdowns, depression, feeling of helplessness. That's psychological trauma. He was screaming in pain. He didn't go to a doctor, so perhaps he had more serious injuries. We just – For his personal fear and just frustration, he did not go to the doctor. He said humiliation. Finally, to the extent that it's an issue whether or not the well-founded fear standard was addressed in the briefs, this Court's opinions frequently address both well-founded fear by going first to the withholding standard, which is far higher. It was adequately addressed in the brief. Okay. Thank you very much. And like the earlier cases, this is still our integration case. Thank you.
judges: Berzon, Bybee, Gleason